And we'll move to our third case this morning. DuPage Regional Office of Education versus the U.S. Department of Education. Ms. King. Good morning. May it please the Court. I'm Carolyn Kane, and I represent the petitioner, the DuPage Regional Office of Education, the DROE. I'm here today in support of the DROE's petition for review of an ALJ decision requiring the DROE to pay its former employee, Albert Sanchez, damages for allegedly retaliating against him for engaging in whistleblower activity under the National Defense Act, the NDAA. In the DROE's brief, we make two separate arguments. First, I'd like to speak to our sovereign immunity argument. We argue that the DROE is an arm of the state and thus entitled to immunity. Whether the DROE is immune depends on its financial autonomy from the state and its legal status. The DROE does not have financial autonomy from the state, not only because it receives a majority of its funds from the state. Could we start with the legal status, statutorily? Sure. How this agency fits within the school code. Sure. So the Regional Office of Education is created by the Illinois School Code. It's also governed by the Illinois Administrative Code and through the Illinois State Board of Education mandates. It essentially serves as an intermediate agency between the state of Illinois through ISB, the Illinois State Board of Education, and local school districts. And it's headed by an elected regional superintendent of schools, elected in a countywide election. Correct, Your Honor. And it exists in every county or only some counties? They're in every county. And I believe the city works a little differently, but. Right. It's a class two city or whatever, so that it is a standalone education system. But are there any county superintendents of schools in Illinois, or are they all this regional superintendent of schools, but it's the equivalent of a county because the region corresponds to county lines? Or are some regions composed of several counties? The, I believe, I can speak to DuPage. I believe some regions are, the regions are set by ISB. Right, but this is not DuPage uniquely, even though that's who you represent. We have to see and understand, for purposes of your sovereign immunity argument, where this regional agency fits in the hierarchy of educational agencies within the state. If it's the equivalent of a countywide agency, a countywide school agency that basically is a conduit for the money flow between the state and the local school boards, then it's not an arm of the state. If it's a statewide agency under the auspices of the State Department of Education, if I'm using the correct term, maybe it's not called that here, but then the analysis might be a little bit different. So I'm trying to see where it fits in the statutory scheme. So in the statutory scheme, there's ISB and ISB sets the regions. No acronyms, please, if you could use words. Sure. The Illinois State Board of Education is the statewide State Board of Education. Is that elected? No. It is appointed by the governor. Is there an elected state superintendent of schools? No, that is appointed by the governor. Okay. But there is a state superintendent of schools appointed by the governor? Correct. And a state board of education appointed by the governor? Correct. Okay. And where do the regional agencies fit in? The Illinois State Board of Education has divided... No, by statute, before we talk about what has been done as a regulatory matter. By statute, the Illinois School Code sets regions, creates the regional office of education. ISB determines where that lies and where the boundaries are. And this scheme came into being when?  But it replaced the old countywide regional agencies? I'm not sure, Your Honor. So you don't know the history of it? No. And as far as, to speak further to the legal status of the regional office of education, DuPage Regional Office of Education does serve regulatory functions under the school code and at the direction of the Illinois State Board of Education. The regional superintendent receives her salary from the state and her duties are defined within the Illinois School Code. So moving forward, Your Honor, it is our position that DuPage Regional Office of Education is an arm of the state and is entitled to sovereign immunity. And in order for it to be held liable, Congress has to abrogate that immunity or the DuPage Regional Office of Education must waive immunity. Is the regional superintendent and the staff of the regional agency, are they considered state employees for purposes of immunity? That is our position. I'm sorry? Yes. And that's pursuant to what statute? The Illinois School Code and based on the factors of lack of financial autonomy and the legal status of the DROE. My question had to do with immunities. Are they considered state employees for purposes of immunities? The regional superintendent is a state employee. The other employees are employees directly of the DuPage Regional Office of Education. Ms. Cain, this matter really wasn't discussed at any length in the district court. Am I right? We came here from an ALJ. I'm sorry, from the ALJ. Right. It was not discussed before the ALJ. Okay. We do not believe that this argument is, however, waived and that it can be raised at any time. I understand. And I gather because it's an ALJ and not the district court, you don't think there'd be any sense in our remanding this to the ALJ. It's not really an issue the ALJ can competently address from an institutional point of view. I would agree with that, Your Honor. I see. And your merits argument on the sovereign immunity point relies on the Fifth Circuit case? Correct, Your Honor. The Texas Education Agency case from the Fifth Circuit, in which it found that sovereign immunity barred suit under the same statute, the NDAA, as well as the Perez case from the Fifth Circuit. And in that case, similar to this case, there was a regional office of education that served the same functions as the DuPage regional office of education. And based on that, we believe that, in this case, the DuPage office of education would be entitled to immunity, as well as the other cases cited in our brief from the Fourth Circuit and other district court decisions finding the same, that immunity would apply. What do you do with our MCI case? With MCI? Yeah. How does that fit into your mosaic? Right, Your Honor. MCI analyzed immunity based on the Telecommunications Act. That contains different language, and we don't think the same analysis would apply under the NDAA, particularly where there's case laws explicitly finding that Congress did not abrogate immunity under the NDAA like it did under the Telecommunications Act. That case law being the Fifth Circuit case? Fifth Circuit case. So that's a pretty recent case, right? Yes, it's from 2021. Is this an abrogation case or a waiver case for purposes of your sovereign immunity argument? We think that the case law is clear that there is no abrogation. The department does argue that there is a waiver, and we do not believe that there is. The DROE did not knowingly and voluntarily waive immunity. Further, their argument is based on the language of the statute. This argument was raised and rejected in the Texas Education Agency case. And further, in that same case, the court found that there is no waiver by accepting federal funds. This is also supported in the SLAC case we cited in our brief as well as the Groover case. At a practical level, an organization such as yours, DROE, getting involved in a situation like this with the receipt of federal funds, how would counsel ever read this whistleblower statute and not realize that if he's got a whistleblower, if a whistleblower problem arises under the administration of this grant, he's going to be in federal court? I didn't understand the question. I'm sorry, Your Honor. Well, you've put yourself in the position, maybe you were there, of a lawyer advising the DROE and DROE is going to be involved in this grant activity. Wouldn't you, just reading the statute, say, well, if we ever have a whistleblower problem here, we're going to end up in federal court? The statute says that. I mean, you know, that's where it's going. Right. The statute says that you would be subject to the NDAA. We don't believe that this effectively abrogates the immunity that the DROE has, nor does it provide a basis for a waiver. What more would be required? The law requires unequivocal statutory language. So, for example, in Title IX, it says immunity shall not apply. And I believe there's similar language within the Telecommunications Act, which is what the court relied on. There is no similar language within the NDAA. Are we reducing this whole sovereign immunity inquiry, then, to a question of there being some magic language, some red legend language, to borrow from the SEC world that if that language isn't there, even though we have sophisticated governmental parties involved, there's sovereign immunity? Yes, Your Honor, because that's what is required for Congress to abrogate that immunity. And you rely on, in addition to the Fifth Circuit case, what case in the Supreme Court? There is the Rhode Island Department of Environmental Management case out of the Fifth Circuit that analyzed whistleblower provisions of the Solid Waste Disposal Act. They similarly found that immunity applied. Also, the Delmuth v. Muth case, that is a U.S. Supreme Court case, stating that although the statute I issue in that case, the Education of Handicapped Act, stating that an entity could be liable for damages, that isn't enough to abrogate immunity. Well, we haven't given you much of a chance to talk about the merits. Why don't you tell us a little bit about the merits here? Sure, I'd like to do so. I am running out of time, so just to provide a brief summary, we argue that the decision is unsupported by the substantial evidence, arbitrary, capricious, and abuse of discretion, and otherwise not in accordance with the law, because the evidence in the record shows, and the OIG's office found, that there was no evidence supporting any retaliatory conduct. Further, and I just want to highlight this point, the ALJ ignored important facts that supported the ROE's position, and that speaks directly to the ROE's clear and convincing evidence in this case. And this is primarily the fact that the ROE self-reported itself to the department, the very same respondent in this case and the one who appeared here today. And the department, in writing, assured that the ROE was not engaging in any misuse of funds, as Sanchez alleged. Further, the ALJ did not consider the evidence that other employees who engaged in similar misconduct, as Mr. Sanchez, were treated similarly. We believe that the failure to consider this important evidence, as well as the other issues we speak to in our brief, provides that this decision should be vacated. And this goes to your defense that you would have fired him anyway, but for these disclosures. Correct, Your Honor. That each alleged reprisal was warranted, despite the disclosures. And with that, I would like to reserve my time. Thank you. Thank you. Ms. Lilly. Ms. Lilly. Good morning, Your Honors. Janie Lilly for the U.S. Department of Education. The agency reasonably determined that Mr. Sanchez was terminated and suffered other adverse employment actions as retaliation for his protected whistleblower activity. And those determinations were supported by the record. Given the Court's questions, I would like to respond to DuPage's argument that it can claim state sovereign immunity as an arm of the state. Judge Sykes, your questions directed to the legal status of DuPage go to the question of whether DuPage can claim that it's an arm of the state. And fundamentally, that question is, who pays the award? It's DuPage's burden to show that the state of Illinois would have to pay the damages award in this case, and it simply hasn't done so. In its brief, it suggests that the award might be paid through certain state grants. We don't know if those are earmarked for other purposes or available for this purpose or perhaps some sort of local user fees. And so DuPage simply hasn't shown that it can claim any state sovereign immunity that would be applicable under the statute. But it's not a taxing body. It's not a taxing authority, and so all of its money comes from the state or grant funding, apparently. Yes, Your Honor. Or maybe these user fees, but I'm still struggling somewhat with the statutory scheme. Yes, it is unclear, and DuPage has not made it clear that it's the state appropriations that must pay the damages award. It gestures to perhaps some insurance coverage, user fees, or perhaps some state awards, but merely receiving state grant funds doesn't convert any entity, even one that receives a lot of state grant funds, into an arm of the state for state sovereign immunity purposes. Although, as an agency without taxing authority, it's not really the equivalent of a county. So it can't raise its own money to pay its bills through taxation, at least. It has asserted that it has some authority to generate user fees, Your Honor, and so whether that would be the source of the funds used to pay for the damages award would certainly suggest that it's not an arm of the state if it's able to collect money locally. So this is really more just a failure of proof argument that you're making rather than a legal conclusion about the actual legal status of this agency? Yes, Your Honor. We simply don't have enough information. It wasn't raised before the administrative body, and DuPage hasn't provided sufficient information in its brief for the court to conclude that it is an arm of the state. Things that it points to, that it receives a lot of state money, that certain aspects of its structure suggest that it's closer to a state entity than a local entity, just aren't sufficient to show that Illinois would be ultimately liable to pay the damages award in this case. I'm guessing that the Department sends grants of this sort and others to a whole host of these agencies throughout the state of Illinois, right?  There are lots of different structures and lots of different configurations, and that's why the burden is on the entity itself. And a ruling from this court saying that those agencies are not subject to the Whistleblower Act would be a highly consequential ruling when we don't really have clear briefing on what the legal status of these agencies is. Yes, Your Honor. As Judge Ripple pointed out, the statute is clear that all grantees who receive money, including the $20 million that DuPage received in these two grants, are subject to protecting whistleblowers who blow the whistle on misuse of those funds, determining that some large portion of federal grantees, which states and their arms are a significant, if not the majority, of federal grantees and contractors are immune from this statute, would eviscerate it. Perhaps you could address the statutory language argument that your colleague made to us, that the whistleblower statute is simply inadequate to support a waiver of sovereign immunity. Your Honor, the statute is clear that all federal grantees and contractors, the bulk of whom are states throughout the federal government, must comply with the whistleblower retaliation provision, not only the protections but the administrative scheme and the possibility that those grantees would be on the hook for a damages award, which is precisely what happened here. So the language is clear, both with respect to whom it applies and the possibility of damages award, and that is sufficient to put a state entity, if DuPage is one, on notice that it must comply with the whistleblower retaliation provision if it accepts millions of dollars of federal funds. I'm sorry, please. Where did the Fifth Circuit go wrong then? Your Honor, the Fifth Circuit found that language unclear. The Fifth Circuit's own case law did not require talismanic invocations of magic words, as Judge Ripple noted, but the Fifth Circuit said it didn't use language of waiver, condition, immunity, Eleventh Amendment. That's simply not consistent with this court's case law, as noted in the MCI case. Congress doesn't need to speak in terms of immunity or Eleventh Amendment or waiver condition, but just make clear to those who are going to receive federal funds what are the terms of those funds, and Congress did so here. Turning to the merits for a moment, we've got a lot of calls here, and very frankly some of them fairly questionable by the ALJ. Suppose we were to find, let's say, two of these to be arbitrary and capricious. Would we have to then send the whole thing back? No, Your Honor. First, of course, we dispute that the calls were questionable, or even if they were questionable that they rose to the standard necessary under the Administrative Procedure Act. But, Your Honor, it would be sufficient for this court to uphold the ALJ's determination that Mr. Sanchez was terminated as an unlawful reprisal for his disclosure, because that would support the entirety of the award. That would be awful hard to do, wouldn't it, if we threw a couple of these out? No, Your Honor. The agency's decision that Mr. Sanchez was terminated as a result of his protected disclosures was based on substantial evidence and supported by the entirety of the record. There, the ALJ found that Mr. Sanchez had satisfied his burden of showing a causal connection, not only because it was undisputed that DuPage knew about his disclosures at the time of his termination, but that his termination occurred a mere eight months after those disclosures, but was really precipitated by the employee performance plan that occurred 30 days after he made his second protected disclosure. Didn't the ALJ, though, the way I read it, didn't the ALJ find that it was the reprisals in combination that led to the dismissal, you know, that led to the performance plan that led to the dismissal? And if some of these reprisals, I mean, I'll be honest with you, this finding regarding this sex panther stuff, to me, I mean, I just can't possibly imagine it. I mean, the ALJ makes a finding there that that was a reprisal, that he was disciplined for appearing on YouTube videos as a sex panther, I think, or whatever he called himself, and that was, I think she said that that was a reprisal for his reporting. Yeah. Right? That he shouldn't have been disciplined for that, basically. Well, Your Honor, slightly, if I may add to that. Oh, yes, of course. The ALJ found that the DuPage's report of this computer misconduct was exaggerated, that, in fact, the investigation by DuPage and the reports into that misconduct exaggerated the allegations at issue, that Mr. Sanchez had admitted to one of them, and that it was, that the allegations, as reported in the report of investigation and the ALJ's report, were that a particular word appeared on his computer when he opened it. I don't believe that there were allegations of YouTube appearances or videos, but merely inappropriate words with sexual connotations. One time he did not admit to the second and third allegations, and that the DuPage's investigation and disciplinary action was not taken consistent with its own policy. So the ALJ determined that DuPage had not satisfied its burden to show that it would have taken those disciplinary actions based on its own exaggerations of the allegations at issue and incomplete investigation. In the absence of Mr. Sanchez's whistleblower disclosures. Your Honors, if there are no further questions, we rest on our briefs. All right. Thank you very much. Ms. Cain, you only had 11 seconds left. You may have two minutes to sum up your argument. We kept you busy on the sovereign immunity question. I understand, Your Honor. Just in closing, I just want to highlight again the Perez case, which found a regional office of education immune. Also, I want to point to... But not in Illinois. Not one of these regional offices in a different state. But one that sits in a similar position as this one. As well as the Tucker v. Williams case in which a local agency was found to be an arm of the state. And I think that's all the time I have, so I just want to... Oh, I think I have a minute. I gave you some extra time. If you wish to use it, it's your call. I do wish to use it. Thank you, Your Honor. Okay. As far as the DROE's budget, that has to be approved by the governor. The ROE is audited by the Illinois Auditor General every year, just as the Illinois Auditor General audits all other state agencies, which we believe speaks to our immunity argument as well. What are the sources of funding for this agency? It receives a majority of its funding from the state. What percentage? In our brief, it's over 60%. And where does the rest of it come from? Federal, and then a small portion is local. Local meaning? Local sources it receives funds from. Such as? Local registration fees. Registration for what? This isn't a school. It's not a school. It's not a school district. It's not levying bonds. Understood. So what are the registration fees for? I just know that those are part of the DROE's budget, and that's what the local percentage represents. I don't have further detail. As far as just in closing on the last point, the discipline policy of the DROE speaks to the use of performance action reports in progressive discipline. That is what was issued to Mr. Sanchez and warranted with regard to that allegation. And in closing, I just want to thank the panel for your time today in hearing oral argument and consideration of our briefs. We ask for you to vacate the decision, and thank you again. Thank you. Our thanks to both counsel. The case is taken under advisement.